**UNITED STATES of America, Plaintiff,**

v.

**GOLDEN FIFTY PHARMACEUTICAL CO., INC. and Michael Posen, Defendants.**

**No. 74 C 1124.**

United States District Court,
N. D. Illinois, E. D.

Sept. 21, 1976.

Gregory B. Hovendon, Chief, John R. Fleder, Atty., Consumer Affairs Section, U. S. Dept. of Justice, Washington, D. C., Samuel K. Skinner, U. S. Atty., Jack M. Wesoky, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

William F. Weigel, Rogers, Hoge & Hills, New York City, Daniel W. Vittum, Jr., Kirkland & Ellis, Chicago, Ill., for defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

The United States has brought this action to collect civil penalties from the defendants Golden Fifty Pharmaceutical Co., Inc. (Golden Fifty), and Michael Posen, Golden Fifty's president, pursuant to 15 U.S.C.A. §§ 45(*l*), 49, and 52, for violation of a Federal Trade Commission cease and desist order which became final on June 29, 1970. The United States also requests permanent injunctive relief. Jurisdiction is based upon 28 U.S.C. §§ 1337, 1345, and 1355. The plaintiff's motion for summary judgment, Fed.R.Civ.P. 56, is ready for decision on the memoranda, exhibits, and affidavits submitted by the parties.

In material part, the Commission's order provided:

IT IS ORDERED that respondents Golden Fifty Pharmaceutical Co., Inc., a corporation, and its officers, and Michael Posen, individually and as an officer of said corporation, and its agents, representatives and employees, directly or through any corporate or other device, in connection with the offering for sale, sale or distribution of the preparation designated 'Golden 50 Tabulets,' or any food, drug, device or cosmetic do forthwith cease and desist from directly or indirectly:

1. Disseminating or causing the dissemination of, by means of the United States mails or by any means in commerce, as 'commerce' is defined in the Federal Trade Commission Act, any advertisement which:

(a) Represents directly or by implication that respondents are manufacturers of vitamin and/or mineral preparations or maintain laboratory facilities concerned with the formulation, testing or performance of vitamin and/or mineral preparations.

(b) Represents directly or by implication that any product is offered free or under any other terms when the offer is used as a means of enrolling those who accept the offer in a plan whereby additional supplies of the product are shipped at an additional charge unless all of the conditions of the plan are disclosed clearly and conspicuously and within close proximity to the 'free' or other offer.

(c) Represents directly or by implication that an offer is made without 'further obligation,' or with 'no risk,' or words of similar import denoting on the part of the recipient of such offer when in fact there is an obligation incurred by the recipient.

(d) Represents directly or by implication that an offer is made to only a limited customer group or for only a limited period of time when no such limitations are imposed by respondents.

2. Disseminating, or causing to be disseminated, by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase of respondents' products in commerce, as 'commerce' is defined in the Federal Trade Commission Act, any advertisement which contains any of the representations or misrepresentations prohibited by Paragraph 1 hereof.

Second Amended Complaint, ¶ 7.

The second amended complaint alleges that from October of 1970 to July of 1975 the defendants used several mailing services to disseminate advertisements which violated the cease and desist order. Specifically, Count I charges that the defendants made fourteen mass mailings of advertisements which violated ¶¶ 1(b) and (c); Count II alleges that defendants made an unspecified number of mailings of an advertising leaflet identified as "L–130" in violation of ¶¶ 1(a) and (d); and Count III charges that the defendants mailed an advertisement in violation of ¶ 1(b) to two individuals. By their answer to the second amended complaint, the defendant admitted liability for the conduct charged in Counts I and III of the second amended complaint, but reserved the right to contest the number of violations for which they would be liable and against which the statutory penalties could be assessed. Liability was not admitted for the allegations of Count II. Plaintiff has moved for summary judgment on two issues: defendant's liability for the violations alleged in Count II; and, the proper calculation of the number of violations represented by the charges in Counts I and III. Each issue will be treated in turn.

## I. Appropriateness of Summary Judgment on Count II

Determining whether the advertisements violate the cease and desist order is a two-step process. The first step is to construe or interpret the order itself. This

inquiry is generally perceived as a question of law for the court. *E. g., United States v. J. B. Williams Co., Inc.,* 498 F.2d 414, 431 (2d Cir. 1974). The next step is to determine whether the challenged advertisements fall within the scope of the order as construed. The cases reveal some disagreement as to whether this is a question of law for the court or a question of fact for the trier of fact. In *United States v. Vulcanized Rubber & Plastics Co.,* 288 F.2d 257, 258 & n. 2 (3d Cir. 1961), the court indicated the question is one of law. The court correctly stated that its role in an action to recover civil penalties, is not to determine whether the challenged practice is deceptive, but merely to consider whether the practice falls within the order's proscription. But drawing this distinction does not answer the question whether the latter analysis involves factual or legal determinations. *J. B. Williams, supra,* squarely confronted this problem, and found that factual issues are presented. Briefly, the court cited the general rule that the trier of fact decides disputes concerning the meaning and effect of words and acts, particularly if their interpretation depends upon a choice among the reasonable inferences to be drawn from extrinsic evidence. 498 F.2d at 432. Nonetheless, summary judgment is appropriate if the evidence supporting a given interpretation is so clear that a directed verdict would be warranted. *Id.;* 6 J. Moore, *Federal Practice* ¶ 56.04[2] (2d ed. 1976). Lacking pertinent authority from this circuit, we adopt the well-reasoned approach of the Second Circuit.

The meaning of ¶¶ 1(a) and (d) of the cease and desist order is clear. Paragraph 1(a) prohibits defendants from disseminating through the mails any advertisement which directly (*i. e.,* expressly) or by implication represents that they manufacture Golden 50 Tabulets, or maintain laboratory facilities for testing the tabulets' performance. Paragraph 1(d) prohibits defendants from disseminating through the mails any advertisement which represents directly (*i. e.,* expressly) or by implication that an offer of Golden 50 Tabulets is made only to a limited group of customers or for only a limited period of time when no limits are in fact imposed. There is no question that L–130 was disseminated through the mails and so the remaining issue is whether, as plaintiff alleges, L–130 makes or implies these prohibited representations.

L–130 consisted of the following (see Plaintiff's Memorandum, Att. 1, Exh. B): See Figures 1 and 2 on following pages.

Figure 1

1204

Figure 2

As presented to the recipient, the leaflet is folded in thirds. The right hand column of Figure 1, attached, bearing the picture of Johnny Weissmuller, is the front "cover"; the middle column of Figure 1, with the order form, is the back "cover"; the left hand column of Figure 1 is folded inside so that it is the first item seen if the recipient opens the front cover (pursuant to the exhortation "Announcing 'Discovery '72'— See Exciting Details").

The material appearing on Figure 2 is printed on the reverse side of all of Figure

1 and is available to the recipient if he or she unfolds the flier.

■ Plaintiff offers the affidavit of Dr. Ivan L. Preston to support its contention that L–130 violates ¶ 1(a) of the order. See Plaintiff's Memorandum, Att. 1. Dr. Preston's affidavit is a bobtailed version of the results of a consumer reaction opinion poll. After reciting his experiences with such polls, he proceeds to express his opinion as to what the results of a poll of consumers would be were they asked their impressions of L–130. He concludes on the basis of certain of the language of L–130 and the picture of the two men working in a laboratory, that "a large majority of persons . . . would conclude that [L–130] . . . represents directly or by implication that Golden Fifty Pharmaceutical Co. Inc., is a manufacturer of vitamin preparations and/or it maintains laboratory facilities concerned with the formulation, testing or performance of vitamin preparations . . . [and] . . . represents directly or by implication that the offer being made . . . is available for only a limited period of time." *Id.* at 3–4. Assuming the relevancy of the results of consumer reaction polls in cases such as this in which the issue is not whether defendants' advertising is deceptive (that issue having been previously adjudicated by consent) but whether defendants have violated certain precise provisions of a cease and desist order, Dr. Preston's bobtailed version of the poll most certainly would not be admissible. Thus, he would not be heard to testify on the trial of the case as to the results of a poll which had never been taken. *Cf. Zippo Manufacturing Co. v. Rogers Imports, Inc.*, 216 F.Supp. 670 (S.D.N.Y.1963); *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366 (7th Cir. 1976). And he cannot be heard to testify to that effect by way of affidavit on a motion for summary judgment. Rule 56(e), Fed.R.Civ.P. Thus, despite its consumer reaction poll gloss, Dr. Preston's affidavit is nothing more than his opinion as to the import of L–130.

For their part, defendants submit the counteraffidavit of their expert, Dr. Joseph G. Smith. Dr. Smith states that appraisal of L–130 involves the interplay of three factors—explicit content, symbolic content and consumer expectations. Smith Aff. ¶ 4. He then proceeds to dwell upon the latter—consumer expectations—culminating in the tactically astute observation that the consumer regards the likes of L–130 as "junk mail" seldom giving it any heed. *Id.* ¶ 6. As with Dr. Preston's affidavit, assuming the relevancy of consumer reaction in the present posture of this case, the virtue of Dr. Smith's affidavit is its candid expression of personal opinion. He then proceeds to find no explicit or implied representations which contravene the cease and desist order although the expressions "Golden Fifty formulated" and "special limited offer" and "supplies are limited" are bones in his throat. *Id.* ¶ 10.

Were plaintiff's instant motion to turn on the question of consumer reaction to L–130, the motion would be denied for clearly there would be a credibility contest between Drs. Preston and Smith. But the motion does not turn on that issue. The cease and desist order is unambiguous and so is L–130. L–130 directly represents that defendant Golden Fifty maintains a laboratory concerned with the formulation, testing and performance of vitamin preparations. There is no other construction which can be given to the following excerpts from L–130:

(From the cover)

"LISTEN FOLKS—

". . . read inside about the new famous GOLDEN–50 FORMULATED helpful, powerful VITAMINS C and E!

\* \* \* \* \* \*

"ANNOUNCING
" 'DISCOVERY '72'
"SEE EXCITING DETAILS"
(in an arrow pointing to the first "page" inside upon which appears—)
Two men working in a laboratory beneath which appears

"THE GOLDEN–50 'Discovery '72' formulation is a valuable 'nutrition extra'

. . . we proudly describe inside as 'DISCOVERY '72.'"

\* \* \* \* \* \*

Then "inside" the following appears "Presenting 'DISCOVERY '72'—GOLD-EN–50's New Vitamins C and E

\* \* \* \* \* \*

[a testimonial]

". . . Thank your chemist and whomever concocted the pleasant way to take vitamins

\* \* \* \* \* \*

"Famous Golden–50 Ten Honor Features

\* \* \* \* \* \*

"You receive the newest products of vitamin science research, always improved, always formulated for best health and peace of mind"

And finally on the back cover—

". . . The product is formulated to strictest purity and quality standards . . ."

■■■ True, these representations are obscured among other exhortations regarding the virtues of vitamin taking and, as Dr. Smith urges, the consumer may approach Golden Fifty's self aggrandizement with "modest skepticism, and characteristically, less than modest interest." Smith Aff. ¶ 6. But under ¶ 1(a) of the cease and desist order, defendants have, by agreement, been enjoined from making representations the likes of these and that injunction will be honored, regardless of whether the consumer is taken in by the representations.

The same is equally true of the prohibitions of ¶ 1(d) of the cease and desist order. L–130 states unequivocally that Golden Fifty is making a "Special Limited Offer"; that the recipient is receiving a "Special Notice"; that "Supplies are limited"; indeed, that the offer is at "low 'insider's prices.'" Clearly those are representations that the offer is for a limited period of time which defendants agreed not to make when

no such limitations are imposed by defendants.[1]

■■■ We have concluded that the violations here are in all essential respects akin to those in the cases relied upon by plaintiff and that there is no contested material issue of fact as to the violations. In *United States v. Rushing*, 1973–2 CCH Trade Cases ¶ 74,631 (E.D.La.1973), the defendant had been ordered, *inter alia*, to stop representing that he and his agents were associated with the Civil Service Commission. They did not, and the court concluded that the order was violated. In *United States v. Berkeley*, 1972 CCH Trade Cases ¶ 74,187 (S.D.Cal.1972), *aff'd*, 1973–2 CCH Trade Cases ¶ 74,695 (9th Cir. 1973), the defendant had been ordered to include a disclaimer in his advertisements. He did not, and the Ninth Circuit affirmed summary judgment on the issue of a violation. In *J. B. Williams, supra*, the defendant had been ordered not to represent that Geritol remedied tiredness unless it was caused by iron deficiency anemia, which occurs only in a minority of tiredness cases. Instead, defendants' commercials claimed that many healthy women had little or no iron reserves. The court of appeals affirmed a summary judgment on the question of defendant's violation of the order. 498 F.2d at 434. And, in *United States v. Piuma*, 40 F.Supp. 119 (S.D.Cal.1941), *aff'd*, 126 F.2d 601 (9th Cir. 1942), the court found defendants' substitution of the words "gland tablet" for the prohibited "gland tonic" to be an obvious violation.

Accordingly, plaintiff's motion for summary judgment on the issue of liability under Count II is granted. All that remain to be adjudicated on that count are the number of violations and the penalty to be imposed for each violation.

## II. Number of Violations Represented by Charges in Counts I and III

■■■ A determination of the appropriate number of violations depends upon the

---

1. Defendants' denials in their answer are limited to the alleged representation. They do not deny that "no such limitations [were] imposed by them." Accordingly they admit the absence of limitations. Rule 8, Fed.R.Civ.P.

interplay of the penalty section of the statute and the language of the cease and desist order. The statute, 15 U.S.C. § 45(*l*) provides:

> (*l*) Any person, partnership, or corporation who violates an order of the Commission to cease and desist after it has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $5,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the United States. Each separate violation of such an order shall be a separate offense, except that in the case of a violation through continuing failure or neglect to obey a final order of the Commission each day of continuance of such failure or neglect shall be deemed a separate offense.

The order provides in part that defendants shall cease and desist from directly or indirectly:

> Disseminating or causing the dissemination of, by means of the United States mails or by any means in commerce, as 'commerce' is defined in the Federal Trade Commission Act, any advertisement which: [violates ¶¶ 1(a)–(d)].

Defendants admit that the fourteen mass mailings alleged in Count I and the two individual mailings alleged in Count III violate the order. Plaintiff maintains that the defendants are thus liable for sixteen violations and requests summary judgment to that effect. Defendants oppose the motion, contending that the case law mandates an evidentiary hearing on the number of violations. The rule, however, is that a hearing is mandated only if the court perceives a need for more evidence on the question. *See FTC v. Consolidated Foods Corp.*, 396 F.Supp. 1353, 1356 (S.D.N.Y.1975). Here, defendants having admitted the fourteen mass mailings charged in Count I and the two individual mailings charged in Count III, the only remaining issue is one of law: whether these incidents constitute sixteen or fewer violations.

Earlier cases offer little concrete guidance on the appropriate number of violations to be charged when an advertisement is disseminated through a mass mailing. Generally, the courts have accepted the FTC's breakdown with little comment. *E. g., J. B. Williams, supra*, 498 F.2d at 420–421; *United States v. Ancorp National Services, Inc.*, 367 F.Supp. 1221 (S.D.N.Y. 1973); *aff'd*, 516 F.2d 198 (2d Cir. 1975). A plausible explanation for the dearth of authority is that the FTC's estimates have been reasonable, if not conservative. For example, in *United States v. Wilson Chemical Co., Inc.*, 1962 CCH Trade Cases ¶ 70,478 (W.D.Pa.1962), *aff'd*, 319 F.2d 133 (3d Cir. 1963) (mem.), the court found that defendants' advertisement appeared in approximately 25,000,000 comic books. The Government, however, grouped the violations into nine categories depending upon the publisher and the month of publication. The court imposed the maximum penalty upon each of the nine violations, noting in dicta that each individual comic book which reached a customer could be considered a separate violation.

Without straining, we could read the statute and order here to similar effect. The statute provides that *each violation* of a cease and desist order is a separate offense. The order prohibits defendants from mailing or causing to be mailed *any advertisement* which contains a proscribed representation. If defendants had mailed a single advertisement in Count I, we would have little trouble finding a violation. The fact that they mailed millions rather than one or two, as in Count III, does not diminish the seriousness of each individual violation. The Government's charitable grouping of the violations in Count I by date and mailing service is more than reasonable.

Accordingly, we find that the proper number of violations attributable to the conduct charged in Count I is fourteen. Moreover, each of the two individual violations alleged in Count III is properly chargeable as a separate violation of the cease and desist order. The plaintiff's motion for summary judgment on the issue of

the number of violations represented in Counts I and III is granted. An order will enter holding the defendants liable for sixteen violations of the cease and desist order entered in the Federal Trade Commission proceedings bearing docket No. 8792. The amount of penalty to be assessed for each violation remains to be adjudicated.

An order in accord with all of the foregoing has been entered.