COMMONWEALTH *vs.* FALL RIVER MOTOR SALES, INC.[1]

Suffolk. December 3, 1990. - January 31, 1991.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Practice, Civil,* Summary judgment, Discovery, Continuance. *Judgment,* Consent judgment. *Consumer Protection Act,* Motor vehicle franchise, Consumer, Damages, Attorney's fees. *Damages,* Consumer protection case, Attorney's fees. *Contempt. Statute,* Construction.

In a civil contempt proceeding brought by the Commonwealth pursuant to G. L. c. 93A, § 4, in which the defendant was adjudged in contempt, there was no abuse of discretion by the judge in granting the Commonwealth's motion for summary judgment on the issue of an appropriate penalty without first granting a continuance to allow the defendant to complete its intended discovery where, based on the record before him, the judge reasonably could have determined that the further discovery sought by the defendant would not have been essential or helpful to oppose the Commonwealth's motion. [306-309]

Where the penalty assessed in a civil contempt proceeding was determined pursuant to a motion for summary judgment, the judge was not required in accordance with Mass. R. Civ. P. 52 (a) to enter written findings of fact or conclusions of law. [309]

In a civil contempt proceeding by the Commonwealth pursuant to G. L. c. 93A, § 4, against an automobile dealer that placed so-called "invoice price" advertisements for motor vehicles in a newspaper on three separate occasions in violation of a consent judgment prohibiting the defendant from engaging in misleading advertising, the judge did not abuse his discretion in finding more than one violation of the consent judgment and in assessing a penalty of $20,000, twice the $10,000 maximum penalty for a single violation under c. 93A, § 4, where the record before the judge permitted conclusions that the defendant had not made a good faith effort to comply with the consent judgment; that the advertisement was neither a technical violation nor the result of mistake, inadvertence, or ordinary negligence; that the violation caused injury to the public; that the $20,000 penalty represented a small portion of the defendant's gross income from the infractions; and that the pen-

---

[1]Doing business as Lynngate Motors.

alty assessed would vindicate the authority of the Commonwealth by deterring future violations by the defendant and others. [310-315]

In a civil contempt proceeding by the Commonwealth pursuant to G. L. c. 93A, § 4, seeking to assess a penalty for violation of a consent judgment, the Commonwealth was entitled to recovery of attorney's fees and costs. [315-316]

CIVIL ACTION commenced in the Superior Court Department on January 2, 1985.

After a proceeding for contempt was commenced on August 16, 1988, motions for summary judgment were heard by *Paul K. Connolly*, J., on the issue of contempt, and by *Walter E. Steele*, J., on the issue of an appropriate penalty.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Allan R. Curhan* (*Richard J. Shea* with him) for the defendant.

*Stephen A. Jonas*, Deputy Attorney General, for the Commonwealth.

GREANEY J. Pursuant to G. L. c. 93A, § 4, the Commonwealth, through the Attorney General, commenced a civil contempt action in the Superior Court against the defendant Fall River Motor Sales, Inc., for violation of an earlier consent judgment prohibiting the defendant from engaging in misleading advertising. The Commonwealth moved for summary judgment on the issue of contempt. The motion was allowed. After the defendant was adjudged in contempt, a judge of the Superior Court allowed the Commonwealth's request for summary judgment on the issue of an appropriate penalty, assessed the defendant a civil penalty of $20,000, and made other orders of compliance. The defendant appealed from the judgment incorporating the civil penalty and compliance orders. We transferred the case to this court on our motion and now affirm the judgment.

The defendant is an automobile dealership which does business in the name Lynngate Motors. In 1984, the Commonwealth brought a civil enforcement action pursuant to G. L. c. 93A, § 4, seeking to enjoin the defendant from using "in-

voice price" advertisements for motor vehicles.[2] The Commonwealth alleged that the defendant's advertisements violated G. L. c. 93A, and 940 Code Mass. Regs. § 5.02 (5) (1977).[3] In 1985, the parties entered into a consent judgment which enjoined the defendant from using advertisements that violate 940 Code Mass. Regs. § 5.02 (5).[4]

[2]The first paragraph of G. L. c. 93A, § 4, as in effect in 1984, provides, in relevant part, as follows:

"Whenever the attorney general has reason to believe that any person is using or is about to use any method, act, or practice declared by section two to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the commonwealth against such person to restrain by temporary restraining order or preliminary or permanent injunction the use of such method, act or practice. . . . [The] court may issue temporary restraining orders or preliminary or permanent injunctions and make such other orders or judgments as may be necessary [to remedy the violation]."

[3]General Laws c. 93A, § 2 (*a*), declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." The Attorney General, pursuant to the authority conferred by G. L. c. 93A, § 2 (*c*), has adopted the following regulations in 940 Code Mass. Regs. § 5.02 (5), to interpret and apply the statute to the sale of motor vehicles.

"(5) It is an unfair or deceptive act or practice for a motor vehicle dealer to use, in connection with the advertising or sale of motor vehicles, the terms, (dealer's cost), (wholesale), (invoice price), (factory billing), or other terms of like import or any other representation that a motor vehicle will be sold at, above, or below a cost or price standard, unless:
"(a) The cost or price standard represents the total consideration paid by the dealer to the manufacturer for the motor vehicle, and where no hold back, rebate, promotional fee or any other consideration has been or will be paid by the manufacturer to the dealer prior or subsequent to the purchase of the motor vehicle which in any way reduces, diminishes or offsets the cost to the dealer of purchasing the motor vehicle; and
"(b) The advertisement discloses, for each vehicle or class of vehicles offered for sale, and in close proximity to the reference to such standard and in equivalent type or print size thereto, the exact dollar figure represented by the standard and the actual price at which the vehicle or class of vehicles is offered for sale."

[4]The consent judgment tracks the language of 940 Code Mass. Regs. § 5.02(5) and provides in addition: "This judgment is entered pursuant to G. L. c. 93A, § 4, and any violation of this [j]udgment may subject the defendant to civil or criminal contempt sanctions."

In August, 1988, the Commonwealth filed a complaint against the defendant pursuant to the last paragraph of G. L. c. 93A, § 4, for civil contempt alleging violation of the consent judgment and seeking the imposition of a civil penalty and other relief.[5] The defendant had placed an advertisement in the Boston Globe newspaper which offered "6.9% over factory invoice on any in stock Volkswagen" except Volkswagen Fox sedans. The advertisement did not state the exact figure of the price standard or the actual price at which the vehicles were being offered for sale. The advertisement appeared three successive Sundays, on January 10, 17, and 24, 1988. The Commonwealth's complaint sought $10,000 in damages, the maximum penalty for a single violation under G. L. c. 93A, § 4.

The parties jointly obtained an order setting a discovery schedule, Mass. R. Civ. P. 65.3 (g), 386 Mass. 1244 (1982), and subsequently commenced discovery. The Commonwealth, however, objected to most of the defendant's interrogatories and requests for document production. The defendant filed motions seeking to compel production of documents and answers to interrogatories. The Commonwealth then filed its motion for summary judgment, seeking judgment on the issues of contempt and sanctions. In its motion, the Commonwealth asked for a civil penalty of $30,000, claiming that it had learned through discovery that the advertisement had appeared three times in the newspaper, constituting, in the Commonwealth's view, three separate violations instead of one. The Commonwealth opposed the defendant's motion to compel discovery and moved for a pro-

---

[5]The last paragraph of G. L. c. 93A, § 4, provides as follows:

"Any person who violates the terms of an injunction or other order issued under this section shall forfeit and pay to the commonwealth a civil penalty of not more than ten thousand dollars for each violation. For the purposes of this section, the court issuing such an injunction or order shall retain jurisdiction, and the cause shall be continued, and in such case the attorney general acting in the name of the commonwealth may petition for recovery of such civil penalty."

tective order pursuant to Mass. R. Civ. P. 37, as amended, 390 Mass. 1208 (1984).

The defendant sought to schedule argument on its pending discovery motions and to postpone hearing on the Commonwealth's summary judgment motion until after decision of the discovery controversy. The defendant also filed a memorandum of opposition to the summary judgment motion on its merits. Without expressly ruling on the discovery motions, a judge of the Superior Court granted summary judgment for the Commonwealth on the contempt issue and ordered a second hearing on the issue of the penalty.

The Commonwealth next moved to amend its original complaint to increase the amount of the penalty sought from $10,000 to $30,000. The defendant again moved to postpone the decision of the penalty issue pending a ruling on its discovery motions. After a nonevidentiary hearing, another judge of the Superior Court ordered the defendant to: (1) pay a $20,000 civil penalty; (2) comply with the consent judgment; (3) send to the Attorney General for one year copies of all "invoice price" advertisements; and (4) pay attorneys' fees and costs to the Commonwealth.

The defendant does not deny that its advertisement violated the consent judgment and, consequently, that it was properly found in civil contempt. The defendant's arguments are directed to the assessment of the $20,000 civil penalty. The defendant maintains that the judge erred in setting that penalty before it had the chance to complete discovery and in failing to make findings of fact and conclusions of law to support the amount of the penalty. The defendant also argues that its violation was de minimis and warranted only a nominal penalty. In the alternative, the defendant claims that it committed only one violation — not three — and that the maximum civil penalty should have been set at $10,000. Finally, the defendant argues that G. L. c. 93A, § 4, does not authorize the award of attorney's fees and costs to the Commonwealth.

1. We take up the discovery point first. The defendant sought extensive discovery about similar cases brought by the

Commonwealth under G. L. c. 93A against automobile dealers in the past and the Commonwealth's policies and recommendations concerning penalties in such cases. The defendant also sought a description by the Commonwealth of the factual basis for the assertion that its advertisement was false, misleading or deceptive. The Commonwealth opposed the discovery on several grounds, maintaining that the information sought by the defendant was irrelevant and privileged and would be burdensome to produce.

The defendant contends that it was error for the judge to have granted summary judgment on the civil penalty issue without first allowing it to complete its intended discovery. The defendant argues that the judge should have allowed its motions to compel discovery and granted a continuance until the discovery was complete. The information requested, the defendant claims, was necessary because it would show that the penalty sought by the Commonwealth in this case was grossly disproportionate when compared to the Commonwealth's civil penalty policies in other cases. The defendant also claims that the information would have assisted the judge in setting the amount of the civil penalty.

The judge's refusal to grant the continuance sought by the defendant was a discretionary ruling which will be set aside only upon a clear showing of an abuse of discretion. See *First Nat'l Bank* v. *Slade,* 379 Mass. 243, 245-246 (1979). See also *Daily Press, Inc.* v. *United Press Int'l,* 412 F.2d 126, 135 (6th Cir.), cert. denied, 396 U.S. 990 (1969); *Blake Brothers Corp.* v. *Roche,* 12 Mass. App. Ct. 556, 560-561 (1981); *Commonwealth* v. *Colonial Motor Sales, Inc.,* 11 Mass. App. Ct. 800, 810 (1981). The defendant has not demonstrated such an abuse.

A continuance is appropriate if the party opposing a summary judgment motion shows that it cannot, without further discovery, "present by affidavits facts essential to justify [its] opposition." Mass. R. Civ. P. 56 (f), 365 Mass. 825 (1974). See *Godbout* v. *Cousens,* 396 Mass. 254, 262 n.11 (1985); *First Nat'l Bank* v. *Slade,* 379 Mass. 243, 244-245 (1979). See generally Annot., Sufficiency of Showing, Under Rule

56(f) of Federal Rules of Civil Procedure, of Inability to Present by Affidavit Facts Justifying Opposition to Motion for Summary Judgment, 47 A.L.R. Fed. 206 (1980). One common reason for the denial of a continuance in this context is the irrelevance of further discovery to the issue being adjudicated in summary judgment. See *Blake Bros., supra* at 560-561; 10 A.C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2741, at 558-559 (1983 & Supp. 1990); J. Smith & H. Zobel, Rules Practice § 56.8, at 362 (1977 & Supp. 1990). See also *First Nat'l Bank* v. *Cities Serv. Co.,* 391 U.S. 253, 265 (1968) (". . . Rule 56[f], Fed. Rules Civ. Proc., . . . provides for comparatively limited discovery for the purpose of showing facts sufficient to withstand a summary judgment motion, rather than Rule 26, which provides for broad pretrial discovery").

In this case, the judge could have concluded that discovery with respect to the Commonwealth's past recommendations and policies in other automobile dealer advertising cases was of little or no relevance to his assessment of the civil penalty. The amount of any civil penalty to be imposed under G. L. c. 93A, § 4, presents an issue substantially within the judge's discretion; and, in determining the amount, the judge is not obliged to look to the information sought by the defendant's discovery. See *United States* v. *ITT Continental Baking Co.,* 420 U.S. 223, 229 n.6 (1975); *United States* v. *T & S Brass & Bronze Works, Inc.,* 681 F. Supp. 314, 322 (D.S.C. 1988); aff'd in part, vacated in part, 865 F.2d 1261 (4th Cir. 1988); *United States* v. *Phelps Dodge Indus., Inc.,* 589 F. Supp. 1340, 1362 (S.D.N.Y. 1984). Compare *United States* v. *225 Cartons, More or Less, of an Article or Drug,* 871 F.2d 409, 419-420 (3d Cir. 1989) (possible evidence of inconsistent policy of the Food and Drug Administration is not sufficient to defeat summary judgment and does not justify granting a continuance pursuant to rule 56 [f]).

The judge could also have considered that much of the discovery sought by the defendant appeared to be privileged as work product and would not have been allowed even if a continuance were granted. See generally *Hickman* v. *Taylor,*

329 U.S. 495 (1947). The internal documents and other information requested by the defendant appear to have been prepared for litigation by the Attorney General and to contain litigation strategies and policies of that office. "The work product doctrine . . . is intended to enhance the vitality of an adversary system of litigation by insulating counsel's work from intrusions, inferences, or borrowings by other parties as he prepares for the contest." *Ward* v. *Peabody*, 380 Mass. 805, 817 (1980).

The judge could have found as well that the discovery seeking the factual basis of the Commonwealth's claim that the advertisements were misleading or deceptive, requested facts which were already in the defendant's possession. The defendant had copies of the advertisement and did, in fact, rely on information provided in discovery to argue that the advertisement was not false or misleading. Any additional discovery on this point would be of "marginal significance." *Blake Bros.*, *supra* at 561.

Based on the record before him, the judge did not abuse his discretion by refusing to grant a continuance, because he reasonably could have determined that the further discovery sought by the defendant would not be essential or helpful to oppose the Commonwealth's summary judgment motion.

2. We next discuss briefly the issue concerning the written findings. The defendant contends that the judge erred in failing to enter written findings of fact or conclusions of law in support of the civil penalty assessed. Rule of Civil Procedure 65.3, however, which governs civil contempt actions, requires such findings only after a trial. Mass. R. Civ. P. 65.3 (h). The rule provides that contempt complaints shall be tried on their facts according to Mass. R. Civ. P. 52. Rule 52 provides that: "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 . . . " Mass. R. Civ. P. 52 (a). Because the civil penalty in this case was determined pursuant to a rule 56 summary judgment motion, no written findings of fact or conclusions of law were necessary. See *Greenleaf* v. *Massachusetts Bay Transp. Auth.*, 22 Mass. App. Ct. 426, 431 (1986).

3. Apart from these procedural points, the defendant makes no other argument that the civil penalty issue should not have been decided on summary judgment.[6]

We turn therefore to the defendant's arguments concerning the amount of the civil penalty and the assessment of attorney's fees and costs.

The penalty provision of G. L. c. 93A, § 4, provides: "Any person who violates the terms of an injunction or other order issued under this section shall forfeit and pay to the commonwealth a civil penalty of not more than ten thousand dollars for each violation." Within this maximum, a judge possesses discretion to determine the amount of the penalty. See *United States* v. *ITT Continental Baking Co., supra* at 229 n.6; *United States* v. *T & S Brass & Bronze Works, Inc., supra* at 322; *United States* v. *Phelps Dodge Indus., Inc., supra* at 1362. Compare *Evans* v. *Yegen Assocs., Inc.,* 556 F. Supp. 1219, 1235 (D. Mass. 1982) (judge has discretion in determining whether to award multiple damages under G. L. c. 93A, §§ 9 and 11); *Raymer* v. *Bay State Nat'l Bank,* 384 Mass. 310, 319 (1981) (same). The judge assessed a $20,000 penalty against the defendant. His determination must prevail in the absence of an abuse of discretion. *ITT Continental Baking, supra.*

---

[6]The Commonwealth supported its motion for summary judgment with facts established from its discovery. This information included data furnished by the defendant specifically identifying the automobiles sold in the one-month period following publication of the advertisement, the factory invoice price of each automobile, the defendant's final cost including customer added accessories for each vehicle, the amount of other consideration, the final sales price, and the defendant's explanations for prices of vehicles that exceeded 6.9% of factory invoice. The defendant filed two affidavits. The first affidavit, by its attorney, indicated that it could not adequately oppose summary judgment in the absence of the discovery it requested. The second affidavit, by the defendant's treasurer, stated that the advertisement was "part of a single transaction" even though the advertisement appeared in the Boston Globe newspaper on three successive Sundays. The defendant furnished no other substantive material that might create a contested issue of fact on the penalty issue, nor did it contend that a disputed issue of material fact existed. The defendant instead chose to argue its position on the merits based on the facts established by the existing discovery and the affidavits described above.

Under the cognate Federal Trade Commission Act, 15 U.S.C. § 45 (1) (1976), the Federal courts have considered several factors in determining the size of a penalty to assess against parties who violate a consent decree entered into with the government to settle a violation of the Federal Trade Commission Act. These factors include: "(1) the good or bad faith of the defendants; (2) the injury to the public; (3) the defendant's ability to pay; (4) the desire to eliminate the benefits derived by a violation; and (5) the necessity of vindicating the authority of the FTC." *United States* v. *Reader's Digest Ass'n, Inc.*, 662 F.2d 955, 967 (3d Cir. 1981), cert. denied, 455 U.S. 908 (1982). Section 2 (*b*) of G. L. c. 93A indicates that Federal court decisions interpreting and applying the Federal Trade Commission Act are to be looked to for guidance in interpreting the provisions of G. L. c. 93A. In this case, the parties specifically directed the judge's attention to the above factors set forth in the *Reader's Digest* decision as a basis for resolving the Commonwealth's motion for summary judgment. While these factors are neither exclusive nor binding, we shall consider them, along with other concerns, to decide whether the defendant has shown that the judge abused his discretion.

The record before the judge permitted a conclusion that the defendant had not made a good faith effort to comply with the consent judgment. The advertisement was a clear violation of that judgment which explicitly required the defendant to include in any advertisement touting a sale involving factory invoice price "the exact dollar figure represented by the standard [viz., the total consideration paid by the dealer] and the actual price at which the vehicle or class of vehicles is offered for sale." It was readily apparent, therefore, that the defendant had violated both of the principal affirmative requirements of the consent judgment.

The record also indicates that the advertisement was neither a technical violation nor the result of mistake, inad-

vertence, or ordinary negligence.[7] "Where a corporation wilfully violates a [consent judgment] . . . there is every reason to impose a penalty at or near the maximum." *United States* v. *J.B. Williams Co.*, 354 F. Supp. 521, 551 (S.D.N.Y. 1973), aff'd in part and rev'd in part, 498 F.2d 414 (2d Cir. 1974). See also *General Signal Corp.* v. *Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986).

The defendant argues that because the advertisement was truthful, any failure to include the actual factory invoice price or the actual sale price did not mislead or harm consumers. If accepted, this argument would undercut the basis of the consent judgment, which is premised on the fact that the proscribed advertising techniques, whether truthful or not, are inherently deceptive. See *Morgan* v. *Kerrigan*, 509 F.2d 618, 620 (1st Cir. 1975) (contempt proceeding does not open for consideration the basis for the underlying order). See also *Boyer* v. *Bowles*, 316 Mass. 90, 95-96 (1944). The violation, by definition, caused injury to the public, and there was no need for the judge to have, or to consider, proof of any actual or specific injury. "The principal purpose of a cease and desist order [in a consumer protection case] is to prevent material having a capacity to confuse or deceive from reaching the public . . . Thus, whenever such promotional items reach the public, that *in and of itself* causes harm and injury."[8] *United States* v. *Reader's Digest Ass'n, Inc.*, 494 F. Supp. 770, 777-778 (D. Del. 1980), aff'd,

---

[7]The consent judgment required the defendant to inform all of its employees, agents, or servants who have responsibility for placing or authorizing advertisements of its terms. The violation, therefore, was shown to be substantial and not simply an oversight.

[8]Further, as the Attorney General points out, the advertising took place in the heavily regulated area of automobile merchandising. The regulations involved in this case were designed to keep pace with the automobile industry's efforts to develop sophisticated and subtle means of attracting customers. These devices include failing to disclose certain price items, advertising prices lower than the final sale (or "delivered") price of a motor vehicle, and claiming that a "factory invoice" price slightly above dealer cost is being offered. The imprecision of terms such as "delivered price" and "factory invoice price" allows dealers to increase their prices without

*Reader's Digest, supra* (emphasis original). See also *United States* v. *Danube Carpet Mills, Inc.,* 737 F.2d 988, 994 (11th Cir. 1984).

The record also disclosed that a $20,000 civil penalty represented a small portion of the defendant's gross income from the infractions. It has been disclosed in discovery that the defendant had received $126,396 in revenues in the first month following the advertisements, and that these revenues were a direct result of the promotion. The $20,000 represented an assessment which would deprive the defendant of some of the benefits derived from the violations.

Finally, the judge could have concluded that the civil penalty of $20,000 would vindicate the authority of the Commonwealth by deterring future violations by this defendant and others. If a nominal penalty were imposed, as is suggested by the defendant, similarly situated businesses might treat the penalty provision of the statute "as nothing more than an acceptable cost of violation rather than as a deterrence to violation." *ITT Continental Baking Co., supra* at 231. See also *Reader's Digest,* 662 F.2d at 966-967; *Phelps Dodge, supra* at 1367; *United States* v. *Central Adjustment Bureau, Inc.,* 667 F. Supp. 370, 385 (N.D. Tex. 1986). The Commonwealth's contempt action, once proved, should stand as authoritative enforcement of the consent judgment, rather than as a minor annoyance to be absorbed by a defendant as a cost of doing business.

We also reject the defendant's argument that the judge erred in assessing a civil penalty based on more than one violation. The judge could have reasoned that, although the defendant purchased the promotion in one single transaction, there had been three violations of the consent judgment, because the advertisement appeared three separate times in the Boston Globe. Under the penalty provision of the Federal Trade Commission Act[9] there is precedent that conduct of

---

full disclosure to consumers and frequently leads to consumer confusion. For this reason, these practices have been determined by the Attorney General to be unfair and deceptive.

the type engaged in by the defendant may constitute multiple violations. See, e.g., *Reader's Digest*, 662 F.2d at 966-969 (bulk mailing of 17,940,521 letters equalled as many violations of cease and desist order, warranting penalty of $1,750,000); *United States* v. *Golden Fifty Pharmaceutical Co.*, 421 F. Supp. 1199, 1207 (N.D. Ill. 1976) (fourteen mass mailings and two individual mailings were sixteen violations, but each individual letter of the mass mailings could have been construed as a separate violation); *J.B. Williams, supra* at 547-548 (dissemination of eleven different advertisements on 100 separate television programs constitutes 100 different violations); *Piuma* v. *United States*, 126 F.2d 601, 603 (9th Cir. 1942) (one newspaper advertisement published thirteen times in substantially the same form constituted thirteen violations).

Each time the advertisement appeared in the newspaper, the public was exposed to confusing and deceptive advertising practices in violation of the consent judgment. If only one violation were found, as the defendant suggests, because the advertisements were identical and were purchased in a single transaction, the effect of the penalty proceeding under the statute could be substantially diminished. Automobile dealers could place multiple contumacious advertisements for which there would be only a single penalty. In such a circumstance, the maximum $10,000 penalty might not be an adequate deterrent in the face of the size of the profits that could be earned by disregard of a judgment. See *Reader's Digest*, 662 F.2d at 966-967. We conclude that the judge did not abuse

---

[9]The penalty provision of the Federal Trade Commission Act is similar to that of G. L. c. 93A, § 4, and reads as follows:

"Any person, partnership, or corporation who violates an order of the Commission after it has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $10,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the Attorney General of the United States. Each separate violation of such an order shall be a separate offense. . . ." 15 U.S.C. § 45 (l) (1982).

his discretion in finding more than one violation of the consent judgment and in assessing a penalty of $20,000.[10]

4. Finally, we address the judge's award of attorney's fees and costs to the Commonwealth. As originally enacted in G. L. c. 93A, § 4, did not provide expressly for the Commonwealth's recovery of its attorney's fees and costs. In 1985 and 1987, the Legislature amended the first paragraph of § 4 to provide that, in addition to injunctive relief, the Commonwealth may also seek compensatory damages on behalf of injured parties, and, in obtaining relief, may recover its attorney's fees and costs. See St. 1985, c. 468; St. 1987, c. 664, § 2. The last paragraph of § 4 has not been amended expressly to provide for the payment of attorney's fees and costs in an action by the Commonwealth to assess a civil penalty for a violation of an outstanding injunction or order. The absence of any express language in the last paragraph of § 4 on attorney's fees or costs leads the defendant to argue that the Legislature did not intend to permit their recovery in a contempt proceeding like the present one.

---

[10]The defendant claims that it was prejudiced because the complaint alleged only one violation, and the Commonwealth did not amend the complaint to allege three violations before moving for summary judgment. However, in its summary judgment motion the Commonwealth alleged three violations and asked for a $30,000 penalty. The Commonwealth had only learned during the course of discovery that the advertisement had appeared not once, but three times. In addition, prior to the summary judgment hearing on the penalty, the Commonwealth moved to amend its complaint to conform to the facts established by discovery. The defendant, thus, had ample notice and opportunity to defend against the allegation. See J.W. Smith & H.B. Zobel, Rules Practice § 15.7 (1974 & Supp. 1990). See also *Hamed* v. *Fadili*, 27 Mass. App. Ct. 234, 240 (1989), *S. C.* 408 Mass. 100 (1990).

Although the judge did not enter a formal order granting the Commonwealth's motion to amend the pleadings, it is evident that he considered and allowed the Commonwealth's motion to amend. See *Dunn* v. *Trans World Airlines*, 589 F.2d 408, 413 (9th Cir. 1978)("Failure to formally amend the pleadings will not jeopardize a verdict or judgment based on competent evidence"); *Decker* v. *Korth*, 219 F.2d 732, 739 (10th Cir.), cert. denied, 350 U.S. 830 (1955) (same). These considerations, and the lack of any showing of prejudice by the defendant, satisfy us that the defendant's argument lacks merit.

The statute is ambiguous. When ambiguity is present "a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Commonwealth* v. *Galvin*, 388 Mass. 326, 328 (1983), quoting *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975). At the same time, a statute should be read as a whole to produce an internal consistency. See 2A C. Sands, Sutherland Statutory Construction § 46.05 (4th ed. 1984). The entire tenor of G. L. c. 93A is to award attorney's fees and costs to a party who succeeds in demonstrating that a defendant has violated G. L. c. 93A, § 2 (*a*). See G. L. c. 93A, § 9 (4), and the sixth paragraph of § 11. Section 4 appears to maintain that pattern with respect to civil enforcement actions brought on behalf of the Commonwealth by the Attorney General. The Legislature could not have intended to allow the Commonwealth under § 4 its legal fees and costs with respect to knowing violations and to deny such fees and costs when the Commonwealth is required to initiate further proceedings under § 4 to effect compliance with an existing judgment or order. A contrary reading would be clearly inconsistent with the scheme of the statute and the Legislature's manifest purpose of deterring misconduct by affording both private and public plaintiffs who succeed in proving violations of G. L. c. 93A, § 2 (*a*), reimbursement for their legal services and costs.

*Judgment affirmed.*