Fabricant, J.
Introduction
In this toxic tort action, James Seery alleges that he was injured by exposure to vapors from paint solvent made by the defendant, Franklin Paint Company (Franklin). Seeiy alleges that Franklin’s solvent was contaminated with chemicals known to harm the nervous system. He seeks damages for his injury on theories of negligence and breach of warranty. Marion Seeiy, James’s wife, seeks damages for loss of consortium. Presently before the court is Franklin’s motion for summary judgment based on spoliation of evidence. For the reasons stated herein, Franklin’s motion for summary judgment is denied.
BACKGROUND[2]
Mr. Seeiy began employment with the Massachusetts Highway Department’s maintenance and road painting crew in 1984. In 1990, he was promoted to foreman and transferred to the Massachusetts Highway Department’s facility in Northborough. At the Northborough facility, solvent was delivered by the supplier in 250 gallon containers, known as totes. A tote containing solvent for use at the facility was kept in the yard behind the building.
At least since 1984, the Massachusetts Highway Department contracted with Franklin Paint to supply solvent. Under the contract, the solvent was to be composed of equal parts of toluene and heptane. The solvent to be supplied under the contract was not to contain any N-hexane, a chemical known to cause peripheral neuropathy, which Franklin Paint denies ever having purchased or used.
In 1991, Seeiy sought medical attention for tingling and burning in his extremities, headaches and dizziness. Dr. Monica Przelomski diagnosed the condition as peripheral neuropathy. To determine the cause of the condition, Dr. Przelomski referred Seery to Dr. Donald Milton, a specialist in occupational medicine. Dr. Milton suspected exposure to solvents. Dr. Milton asked Joan Parker, an occupational hygienist with the Massachusetts Division of Occupational Hygiene, to examine Seeiy’s work environment.
Parker visited the Northborough site in July 1991. She took air samples, and inspected a variety of aspects of the operation, including ventilation and safety equipment. Parker asked Joseph Adshade, a Highway Department employee, to obtain a bulk sample of the solvent used by the Department. Adshade, according to his affidavit, went “outside the building to the area where the fresh 250 gallon containers of traffic paint solvent delivered by Franklin Paint were stored," and “withdrew a sample from a fresh Franklin Paint solvent tote.” He gave the sample to Parker, who *552 labeled it and sent it to the Wisconsin Occupational Health Laboratory for chemical analysis.
Sometime after her visit, Parker had a telephone conversation with a representative of Franklin Paint regarding the composition of the solvent. The company representative informed Parker that its solvent contained only toluene and heptane, and not N-hexane. On September 16, 1991, while still awaiting the laboratory results, Parker sent a seven page letter to the Highway Department’s district engineer, detailing her observations regarding conditions at the facility, and recommending a list of changes in equipment and practices to protect the health and safety of the workers.
In late September of 1991, the Wisconsin laboratory reported to Parker that tests performed on the liquid bulk sample indicated that the paint solvent contained 2% N-hexane. Parker prepared a report of her own dated September 27, 1991. Misreading the laboratory’s report, Parker reported the result as 20% N-hexane. She sent a copy of her report, showing the 20% figure, with a copy of the laboratory report attached, to the president of Franklin Paint, as well as to officials of the Highway Department. Franklin Paint was not at that time the subject of any claim, suit, administrative proceeding, or other action regarding the contents of the solvent. As far as the present record discloses, Franklin Paint did not take any action in response to Parker’s report. Dr. Milton, provided with the Wisconsin laboratory’s finding, concluded that Seery’s condition was caused by exposure to N-hexane in the solvent.
The Wisconsin laboratory did not return the sample to Parker. Rather, it kept the sample for about one year, and then, in accord with its usual practice, destroyed it. The sample was never in the possession or control of Seery or his attorneys.
In November of 1993, the Seerys filed this action. Discovery proceeded through the Spring of 1996. Franklin Paint took the depositions of Parker, Adshade, and others. Parker, questioned regarding the taking of the sample, could not remember who took it or precisely how it came to be in her possession, but believed she had received it from a Highway Department employee. Adshade was not questioned at his deposition regarding the taking of the sample.
In April of 1996, Franklin Paint issued deposition subpoenas duces tecum to officials of both the Wisconsin laboratory and the Massachusetts Division of Occupational Hygiene, calling for production of the liquid bulk sample. In response, the Division of Occupational Hygiene informed Franklin Paint that Parker had sent the only sample it had ever had to the Wisconsin laboratory, which had not returned it. The laboratory, in turn, informed Franklin Paint that it had destroyed the sample one year after the testing.
Franklin Paint’s position is that its product could not have contained N-hexane, because it has never used that substance in any of its processes. Therefore, either the test result was wrong, or the sample tested did not come from its product, or the sample was contaminated after Franklin paint supplied the product to the Highway Department. It is handicapped in presenting this defense, however, because the laboratory’s destruction of the sample prevented it from conducting its own examination and testing of the sample. Accordingly, it invokes the doctrine of spoliation as a ground to exclude any expert testimony regarding the results of testing of the sample. Reasoning that the plaintiffs will be unable to meet their burden of proof without such testimony, Franklin Paint moves for summary judgment.
The defendant’s motion and supporting memorandum also suggest, but do not clearly assert as a distinct argument, a second ground for excluding the test results: since the information developed in discovery did not identify the person who drew the sample, or precisely when, how, or from what source that person did so, the plaintiffs cannot connect the sample tested to the defendant’s product, so as to make the test results relevant to the plaintiffs’ claims against the defendant. In responding to the summary judgment motion, the plaintiff addressed the spoliation issue, but apparently did not recognize a distinct argument regarding the source of the sample, and accordingly did not offer evidence on the subject.
At argument on the motion, the Court posed questions on this topic, viewing it as logically preceding the spoliation issue. In response, the plaintiffs’ counsel suggested that additional discovery might be necessary to identify the person who drew the sample and its source. Since the discovery deadline had long passed, the Court did not authorize additional discovery, but gave the parties leave to submit supplemental memoranda, with exhibits to be drawn from the materials generated in the discovery already conducted, focusing on the question of the connection between the sample test results and the product supplied by the defendant. In response, the plaintiffs presented the affidavit of Joseph Adshade, identifying himself as the person who drew the sample, and stating that he did so from a tote of fresh solvent supplied by Franklin Paint. The defendant vigorously protests the belated submission of this affidavit, viewing it as in violation of the Court’s instruction at the hearing, as well as M.R.Civ.P. 56(c).
DISCUSSION
This Court grants summary judgment where the record establishes that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that it is entitled to judgment as *553 a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summaiy judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the non-moving party’s case or by showing that the non-moving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion by resting on its “pleadings and mere assertions of disputed facts ...” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summaiy judgment.” Pederson v. Time Inc., supra at 17. “A complete failure of proof concerning an essential element of the nonmoving party’s case renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., supra at 711, citing Celotex v. Catrett, 477 U.S. 317, 322 (1986). Under M.R.Civ.P. 56(c), affidavits in opposition to summaiy judgment must be served prior to the day of hearing. However, M.R.Civ.P. 56(e) authorizes the court to “permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.”
1. The Relevance of the Test Results.
The affidavit of Joseph Adshade, if considered, clearly establishes that he drew the sample from a source that was supplied by the defendant, and that was unlikely to have been contaminated between the time the defendant provided it and the time the sample was drawn. This evidence provides ample foundation for the relevance of the test results. The question, then, is whether the affidavit should be considered, in light of its having been submitted after the hearing, rather than before.
As the defendant points out, Rule 56(c) directs that affidavits in opposition to summary judgment be served “prior to the day of the hearing.” See Kourouvacilis v. General Motors Corp., 410 Mass. at 711. Superior Court Rule 9A, similarly, requires that affidavits and other opposition materials be served on the moving party with the opposition, to be filed with the court as part of the motion package. However, both rules expressly authorize the court to grant leave for the filing of additional papers. M.R.Civ.P. 56(e); Superior Court Rule 9A(a)(3). Nothing in Kouravacilis in any way limits that discretionary power; the Court there merely noted that the trial judge had properly disregarded a document filed after the hearing, without leave.
Here, the plaintiffs opposition to the defendant’s motion addressed its principal thrust, but failed to identify and respond to an issue that the motion presented less clearly. In the Court’s view, the relatively oblique manner in which the issue was presented in the motion made the failure understandable and excusable, and warranted the grant of leave to present additional materials.
In instructing counsel as to the additional materials to be submitted, the Court focused on the question of whether further discoveiy would be permitted, and expressly directed that it would not, hearing no reason that any needed discoveiy could not have been completed within the tracking order deadline. The Court did not address whether the parties would be permitted to submit additional affidavits from their own witnesses, as no specific inquiry occurred on that point. It was clear, however, that the plaintiff would have the burden at trial of showing the relevance of the test results, and must therefore show how it would cariy that burden in order to defeat the summaiy judgment motion. In declining to authorize further discovery, the Court did not intend to preclude the plaintiffs’ presentation of affidavits from persons they plan to call as their own witnesses at trial, in order to demonstrate their ability to meet their burden of proof.
Nor is the defendant prejudiced, since it was aware of Adshade’s involvement during discoveiy, and even took his deposition, but failed to ask about his role in obtaining the sample or knowledge about it. The defendant has offered nothing to explain that failure, or to suggest that it was in some way misled. Nor has the defendant offered any indication of how its position at this point in the litigation would be any different if the Adshade affidavit had appeared with the plaintiffs’ initial opposition to summaiy judgment, rather than after the issues were clarified at argument. Under these circumstances, the Court concludes that, in the exercise of discretion, the Adshade affidavit should be considered. Having considered all materials submitted after the summary judgment hearing, the Court concludes that the plaintiff can show the relevance of the test results, and therefore that those results will not be excluded at trial on the ground of relevance.
2. Spoliation of Evidence.
In support of its effort to exclude the test results based on spoliation, Franklin Paint relies on Nally v. Volkswagen of America, Inc., 405 Mass. 191 (1989), and Bolton v. Mass. Bay Transportation Authority, 32 Mass.App.Ct. 654 (1992). Both cases presented wrongful death claims based on alleged defects in motor vehicles. In Nally, the trial judge had excluded the testimony of the plaintiffs expert on the ground that the expert, in conducting tests on the allegedly defective vehicle, had destroyed crucial parts of the vehicle. On review of that ruling, the Supreme Judicial Court held that:
[Wjhere an expert has removed an item of physical evidence and the item has disappeared, or the expert has caused a change in the substance or *554 appearance of such an item in such circumstances that the expert knows or reasonably should know that that item in its original form may be material to litigation, the judge, at the request of a potentially prejudiced litigant, should preclude the expert from testifying as to his or her observations of such items before he or she altered them and as to any opinion based thereon. The rule should be applied without regard for whether the expert’s conduct occurred before or after the expert was retained by a party to the litigation. The reason for the rule is the unfair prejudice that may result from allowing an expert deliberately or negligently to put himself or herself in the position of being the only expert with firsthand knowledge of the physical evidence on which expert opinions as to defects and causation may be grounded.
405 Mass. at 198.
In Bolton, the expert was an official of a state agency independent of either party, who had investigated not for purposes related to the litigation, but in furtherance of that agency’s regulatory mandate. It was the defendant, however, not the expert, that had destroyed the vehicle (a bus) before the opposing party could inspect it. As the Appeals Court noted, “the actions of the defendant had the effect of reserving to itself all expert testimony based upon the physical inspection of the bus after the accident.” 32 Mass.App.Ct. 657. Under these circumstances, the Appeals Court held that the trial court’s exclusion of the expert testimony offered by the defendant was a proper exercise of discretion that “merely prevented the defendant from exploiting its unwarranted advantage.” Id.
In both Natty and Bolton, the evidence at issue was destroyed while in the possession or control of the party offering the expert testimony, or an expert acting as that party’s agent. In both cases as well, the circumstances indicated that the party or expert responsible for the destruction knew of the litigation, and of the importance to it of the physical evidence. Perhaps most importantly, in both cases the material destroyed was not merely a sample of the thing in issue; it was the thing itself, the very subject matter of the litigation.
Here, the material that has been destroyed was a sample, drawn from one of many 250 gallon containers supplied by the defendant. The plaintiffs do not claim that the sample itself caused Seery’s injury; their theory, rather, is that the sample was representative of the defendant’s product, to which Seery had been exposed regularly over a period of time, and that that exposure caused the injury. While the destruction of the sample prevents the defendant from testing it, nothing has prevented the defendant from taking and testing as many other samples of its product as it chooses. Indeed, had it acted promptly upon receiving Parker’s report in September of 1991, it could have drawn its own sample from the very same tote. The defendant urges that it would have had no reason to do so at that time (or to have requested the sample from the Wisconsin laboratory within the year before its destruction) because no claim had been made against it. Surely, however, notice from a public regulatory agency that its product contained a toxic chemical that it did not use should have alerted the defendant that inquiry was warranted.[3] Thus, the defendant’s lack of access to the sample does not present irnfair prejudice comparable to that in Natty and Bolton, and does not warrant exclusion of the results of testing of the sample.
Nor is exclusion warranted as a sanction for any misconduct. The sample was drawn at the behest of a neutral public official, performing a public safety function unrelated to the Seerys’ claim, and was then placed in the hands of another neutral entity, the Wisconsin laboratory. The laboratory did not act “deliberately or negligently,” Nally, 405 Mass. at 198, but followed its usual practice of destroying samples after one year, having received no request for the sample, and having no reason to expect either that litigation would occur or that the sample “in its original form maybe material to litigation.” Natty, 405 Mass. at 197. The Seerys never had possession or control of the sample, and played no role in its destruction. Under these circumstances, exclusion of the test result would substantially hamper the truth-finding function of the trial, without serving any countervailing interest of justice. The Court therefore declines to exclude the test results on the ground of spoliation. With the results admissible, genuine disputes of material fact clearly exist with respect to whether the defendant’s product cause Seery’s injury, so that summary judgment must be denied.
ORDER
For the reasons stated, it is Ordered that defendant’s motion for summary judgment is DENIED.

The facts set forth are based on the materials submitted in connection with the summary judgment motion, including affidavits, deposition transcripts, and admissions. Among these materials is an affidavit of Joseph Adshade, submitted after argument on the summary judgment motion. The defendant protests the submission of that affidavit at that time, and the Court’s consideration of it. For reasons that will be explained, the Court concludes that the affidavit is properly considered.

Parker’s erroneous statement that the solvent contained 20% N-hexane, rather than 2%, should have made the information all the more noteworthy.