Smith, J.
INTRODUCTION
Plaintiff Proteon, Inc.’s (“Proteon”) complaint against Defendants Digital Equipment Corporation (“Digital”) and Cabletron Systems, Inc. (“Cabletron”), alleges breach of two separate contracts, unfair and deceptive practices in violation of Mass. G.L.c. 93A (c. 93A), and as against Cabletron solely, unjust enrichment. Proteon sought and obtained a preliminary injunction against Cabletron. The order was dissolved eleven days later. Digital filed counterclaims of abuse of process, c. 93A violations, and intentional interference with advantageous business relationship. Cabletron counterclaimed three counts of breach of contract, indemnification, abuse of process, interference with advantageous contractual and business relations, c. 93A violations, and breach of implied covenant of good faith. Digital now moves for summary judgment on the breach of contracts and c. 93A claims. Cabletron moves for summary judgment on the unjust enrichment claim and for partial summary judgment on its counterclaims against Proteon. Proteon moves to dismiss Cabletron’s counterclaims pursuant to Mass. G.L.c. 231, §59H, the Massachusetts Anti-SLAPP statute.
I. PRELIMINARY MOTIONS A. Reply Briefs
Digital’s motion and Cabletron’s motion to file a reply brief are ALLOWED.
B. Proteon’s Motions to Strike Affidavits
Proteon moves to strike paragraphs 3, 4, 5, and 6 of the April 27 William A. Burger affidavit[2] on the grounds of vagueness and lack of personal knowledge. Proteon argues that statements referencing “DEC’S position,” actually appearing in paragraph 2 not paragraphs 3-6, and “senior management” fail to specify a single individual or single conversation, statement, or other specific fact. Digital does not rely on these statements in its motion for summary judgment regarding the interpretation of Section 20.2 of the License Agreement, below, as these constitute parol evidence. Nor will the Court consider the parol evidence for this purpose. Even if the Court were to consider parol evidence, the Court would not strike the affidavit. The affiant states in paragraph 2 that he was one of the negotiators of the License Agreement. As a negotiator for Digital, he represented DEC’S “position” during negotiations. He is therefore qualified to testify as to the negotiations and his understanding of the goals Digital negotiators sought to achieve. Proteon also objects to the documents attached to Burger’s affidavit,[3] because they are not sworn to or certified as Rule 56(e) requires. These documents would be admissible in court as documentary evidence and so are properly part of the summary judgment record. Proteon’s motion to strike the April 27 Burger affidavit and attachments is DENIED.
Similarly, Proteon objects to paragraphs 13-17 of the Christopher J. Sullivan affidavit for vagueness, lack of personal knowledge and for failure to attach sworn or certified complete documents. The affiant, who states he was the lead Digital negotiator in its transaction with Cabletron, is qualified to state the terms of that negotiation, in particular, that Digital did not assign the Brouters Agreement. There is no basis for striking paragraphs 13-17. The attached documents will not be stricken as they are documentary evidence. As to Proteon’s claim that the documents are too highly redacted to be reliable, the court notes that the same documents, without redactions, are attached to the April 27 Burger affidavit. Proteon’s motion to strike paragraph 13-17 of Sullivan’s affidavit is DENIED.
Proteon moves to strike the May 12, 1998 supplemental affidavit of William A. Burger for failure to include the Basic Order Agreement and for improperly drawing legal conclusions about the agreement terms. Cabletron subsequently submitted the Basic Order Agreement to the court. Proteon’s motion is DENIED.
*447 Proteon moves to strike the Burger Multiswitch 900 and the Frank A. Coppola affidavits on the grounds that they were filed with a reply brief rather than with the motion papers, as Rule 9A(a}(3) requires. Proteon further argues that the Burger Multiswitch 900 affidavit is invalid because it claims there are signs of alteration.
Rule 9A(a)(3) requires leave of court for submission of additional papers after serving motion papers; Rule 56(e) authorizes the court to permit supplemental affidavits. In this instance, the affiant Burger seeks to clarify alleged incorrect beliefs and opinions of a plaintiff affidavit and the affidavit was served well before the summary judgment hearing. Compare Seery v. Franklin Paint Co., 6 Mass. L. Rptr. 551, 553 (May 19, 1997) (J. Fabricant) (court exercised its discretion to admit affidavit after summary judgment hearing where failure to serve the affidavit prior to the hearing was understandable and excusable). The Frank A. Coppola affidavit merely provides supporting documentation for a proposition previously asserted by affidavit and unsuccessfully contested by Proteon, specifically, the undisputed fact that Digital’s sale of its Network Products Business Unit to Cabletron included the assignment of the Basic Order Agreement.
Secondly, the plaintiffs fear of alteration with respect to the Burger Multiswitch 900 affidavit is unfounded. That the final page appears in a smaller font is immaterial and that the final line of page two is repeated on page three does not alter the facts to which the affiant attests. The affidavit is properly signed under the pains and penalties of peijuiy, thereby providing adequate assurances of truthfulness. See Danis v. Bridge Enterprises Inc., 8 Mass.App.Ct. 930, 931 (1979) (affidavit is defective where neither verified by oath nor signed under the penalties of peijuiy). The court DENIES Proteon’s motion to strike the Burger Multiswitch 900 and Frank A. Coppola affidavits.
C. Digital’s Motion to Strike Affidavits
Digital moves to strike the affidavit of Robert Koch, asserting that it contains statements not based on personal knowledge and inadmissible parol evidence. Digital objects to Koch’s use of the words, “it is my belief...” (para. 7) regarding a Cabletron product, the MultiSwitch 900, and “assume” (para. 8) regarding the results of the Digital-Cabletron transaction. Proteon in its opposition claims these words indicate statements of opinion by a person with expertise in the field, noting that the affiant states he is familiar with the hardware and software concerned. The court must disregard affidavits made on information and belief, as opposed to personal knowledge. Madsen v. Erwin, 395 Mass. 715, 721 (1985). While Koch may be familiar with Proteon technology that was licensed to Digital, he lacks direct knowledge as to a third party’s alleged use of the technology. Therefore, Digital’s motion to strike is ALLOWED on these grounds. Digital’s additional objection to parol evidence is immaterial, as it is not necessary to consider parol evidence to interpret the terms of the License Agreement, discussed below.
D. Cabletron’s Motion to Strike Affidavit
Cabletron’s motion to strike the affidavit of Robert A. Koch is ALLOWED for the same reasons the Court granted Digital’s motion above.
II. CLAIMS BETWEEN PROTEON AND DIGITAL BACKGROUND
The summary judgment record, including the defendants’ statement of facts and the plaintiffs response under Superior Court Rule 9A, reveal the following facts. Proteon and Digital entered into the “Software Source Code Licence Agreement” (“License Agreement”) on August 23, 1994 and amended it on June 30, 1995. Amended Verified Complaint (“Am. Ver. Comp.”) para. 9. Pursuant to this agreement, Proteon licensed certain technology to Digital in return for the payment of certain license fees. [Digital’s Amended Counterclaim, para. 5.) Proteon and Digital entered into the “Hardware and Software Development and Software Distribution Agreement for Network Brouters Agreement” (“Brouters Agreement”) on or about April 14, 1994. [Affidavit of William A. Burger dated April 27, 1998 (“April 27 Burger Aff.”), para. 7.] The Brouters Agreement allows assignment of the agreement or any rights or obligations therein only upon written consent of the other party. [Affidavit of Christopher J. Sullivan (“Sullivan Aff.”), para. 16, citing Brouters Agreement, para. 28.5.) The License Agreement, in Sections 20.2 and 20.3, authorizes Digital to assign its rights under the License Agreementwithout the consent of Proteon. [Am. Ver. Comp., para. 11.)
Digital had made all license fee payments to Proteon, as required under the License Agreement, prior to November 27, 1997. [Affidavit of William A. Burger dated April 8, 1998 (“April 8 Burger Aff.”), para. 3.] On November 27, 1997, Digital and Cabletron entered into an agreement (“Asset Purchase Agreement") regarding Cabletron’s purchase of Digital’s Networks Products Division. [Sullivan Aff., para. 3.) Digital requested Proteon’s consent to the assignment of the Brouters Agreement on December 9, 1997. [Am. Ver. Comp., Ex. E.) Proteon did not consent to assignment of the Brouters Agreement. [Am. Ver. Comp., para. 13; April 27 Burger Aff., para. 7.) The Digital-Cabletron Asset Purchase Agreement also included the assignment of Digital’s rights under the License Agreement. [Am. Ver. Comp., para. 21.) Digital never obtained Proteon’s consent to this assignment. [Am. Ver. Comp., para. 13.) The Digital-Cabletron transaction closed on February 7, 1998. [Am. Ver. Comp., para. 12.)
Proteon disputes Digital’s statement that the Asset Purchase Agreement between Digital and Cabletron included Cabletron’s agreement to purchase the business of Digital’s Networks Products Division, on the *448 basis that the supporting affidavit by Christopher J. Sullivan is inadequate. Proteon also disputes Digital’s statement that the original Asset Purchase Agreement contemplated the assignment of both the License and Brouters Agreements, based on the alleged insufficiency of the Sullivan and Burger (April 27) affidavits. The affiant’s statements and attachments are properly part of the summary judgment record, as discussed above, and Proteon fails to offer evidence contradicting these statements. For these reasons, Proteon fails to raise a genuine issue of material fact.
In summary, there are no genuine issues of material fact regarding two additional matters. The Asset Purchase Agreement originally included the assignment to Cabletron of Digital’s rights under the Brouters Agreement. [April 27 Burger Aff, para. 7; Sullivan Aff., para. 16.] Digital ultimately did not assign the Brouters Agreement to Cabletron. [April 27 Burger Aff, para. 7, Sullivan Aff., para. 16.]
DISCUSSION
Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Comm’r. of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.R. 56(c). Where the party moving for summary judgment does not bear the burden of proof at trial, the movant must submit affirmative evidence negating an essential element of the nonmoving party’s case or show that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party established the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Additionally, in ruling on a motion for summary judgment, the “record facts [are credited] most favorably to the party opposing the motion.” Sullivan v. Boston Gas Co., 414 Mass. 129, 130 n.2 (1993).
A. Breach of Contract
1. The License Agreement
Digital asserts that assignment of the License Agreement did not require Proteon’s consent, in accordance with the terms of Section 20.2. Digital reads Section 20.2 to permit, but not require, the retention of support and maintenance technology. Proteon contends that assignment under Section 20.2 does not require consent, but only in the instance where Digital retains from the License Agreement certain support and maintenance technology. Because Digital assigned all rights under the License Agreement, Proteon claims Digital breached the consent requirement of the agreement.
To succeed in a breach of contract claim, the plaintiff must show “an agreement, breach and the resulting damages.” Loranger Const. Corp. v. E. F. Hauserman, Co., 1 Mass.App.Ct. 801, 801 (1973). The interpretation of a contract is a matter of law. Lexington Ins. Co. v. All Regions Chemical Labs, Inc., 419 Mass. 712, 713 (1995). Contracts are construed “according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed.” Liberty Mutual Ins. Co. v. McLaughlin, 412 Mass. 492, 494 (1992), quoting Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982). “[E]veiy word and phrase must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable.” Jacobs v. United States Fidelity & Guaranty Co., 417 Mass. 75, 77 (1994), quoting Wrobe v. Gen'l. Accident Fire & Life Assurance Corp., 288 Mass. 206, 209-10 (1934). “An interpretation which gives a reasonable meaning to all of the provisions of the contract is to be preferred to one which leaves a part useless or inexplicable.” Id., quoting Sherman v. Employers’ Liability Assurance Corp., 343 Mass. 354, 357 (1961).
Section 20 of the License Agreement entitled “Assignment” reads as follows:
Either party may assign its rights hereunder in connection with a consolidation, merger, or sale of substantially all of its assets.
Section 20.2 reads in relevant part,
Digital may fully assign its rights hereunder in connection with a transfer of all its internetworking business or a product line thereof to a third party, retaining only rights in the Licensed Technology sufficient to support and maintain the then installed base of Products . . .
Section 20.3 reads in relevant part,
In the event that Digital wishes to transfer all or part of its internetworking business to a third party and retain all the rights as specified in this Agreement to the Licensed Technology for continued use in its internetworking or other businesses, Digital may partially assign (or sublicense) all of its rights hereunder in the Licensed Technology to such third party.
Section 20.4 reads,
Except as provided in this Section 20, this Agreement shall not be assigned by either party without the written consent of the other.
When analyzing Section 20.2 alone, it is not possible to determine whether the language is permissive or restrictive. The clause “retaining only rights in the Licensed Technology sufficient to support and maintain the then installed base of Products” may modify the entire preceding clause “Digital may fully assign its rights hereunder in connection with a transfer of all its internetworking business or a product line thereof.” Because of the disjunctive “or,” the retention clause may also modify just the second half of the clause, “a product line thereof.”
*449 Looking at the language in the context of Section 20 as a whole, it becomes clear that the retention clause modifies both parts of the preceding clause. Section 20 establishes the provisions for assignment. Section 20.4 makes it clear that an assignment will generally require consent by Proteon. Sections 20.1, 20.2, and 20.3 set out exceptions to the consent requirement. The plain language of Section 20.3 permits a complete or partial transfer of Digital’s inter-networking business coupled with retention of all rights under the License Agreement, while Section 20.2 permits the complete transfer of Digital’s inter-networking business or a product line of the inter-networking business coupled with retention of support and maintenance rights under the License Agreement. In both instances the coupling of the transfer with retention of support and maintenance is mandatoiy. There is no additional section specifically authorizing a transfer coupled with no retention of the License Agreement rights. Because Sections 20.1, 20.2, and 20.3 are exceptions to a generally applicable provision, it is reasonable that the language be read narrowly. Thus, Sections 20.1, 20.2 and 20.3 spell out specific instances in which consent is not required. Accordingly, the court finds that Section 20.2 is a restrictive, not permissive, term in the License Agreement.
To the extent that Digital’s motion for summary judgment turns on a permissive construction of Section 20.2, it is DENIED for the reasons stated above.
2. The Brouters Agreement
As discussed in the- analysis of Proteon’s alleged disputed facts above, there is no genuine dispute regarding the fact that Digital did not assign the Brouters Agreement to Cabletron as part of the transaction finalized on February 7, 1998. Proteon’s belief that a product manufactured by Cabletron, the MultiSwitch 900, cannot be manufactured without Proteon technology provided to Digital under the Brouters and License agreements is not evidence that Digital assigned those rights to Cabletron.[4] Accordingly, Digital’s motion for summary judgment on Proteon’s breach of contract claim as to the Brouters Agreement is ALLOWED.
B. Chapter 93A Violations
Proteon alleges that Digital failed to obtain consent for its assignment of the License and Brouters Agreements to Cabletron, and that Digital acted in bad faith and misrepresented its transactions with Cabletron with respect to Digital’s rights under the said agreements, thereby constituting willful violation of c. 93A.
General Laws c. 93A, §2(a) provides: “Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.” Conduct disregarding known contractual obligations and intended to secure benefits for the breaching party constitutes an unfair act or deceptive practice for the purposes of c. 93A. Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 474 (1991). In the absence of extortionate qualities, however, failure to perform contractual obligations does not invoke c. 93A remedies. Atkinson v. Rosenthal, 33 Mass.App.Ct. 219, 226 (1992).
Digital asserts that because it did not breach either of the agreements, there can be no c. 93A violation. As a matter of law, Digital did breach the License Agreement. However, breach of the License Agreement alone is not grounds for a c. 93A violation. Digital asserts that Proteon fails to state facts that demonstrate an extortionate quality in the Digital-Proteon correspondence. Proteon identifies two letters from Digital to Proteon, dated December 22, 1997 and December 31, 1997, respectively, as evidence of affirmative misrepresentations by Digital. Proteon disputes Digital’s characterization of the December 22 letter as asking Proteon to acknowledge and agree to the assignment of the License Agreement but not consent to the assignment. [See Plaintiffs Amended Response to “Statement of Undisputed Material Facts” of Digital Equipment Corporation, para. 22.) Proteon also disputes Digital’s characterization of the December 31 letter as evidencing that Digital would not retain any rights under the License Agreement. Id., para. 24. Even assuming that Digital intended to seek Proteon’s consent in the December 22 letter, as discussed above, there is nothing in the letter to suggest conduct beyond mere breach of contract. This coupled with the fact that Digital ultimately did breach the License Agreement does not fall to the level of a c. 93A violation. For the same reason, even if the December 31 letter did mean that Digital was retaining all its rights under the License Agreement, thus making the transaction subject to the $3.75 million fee under Section 20.3 which Digital has refused to pay, there is nothing more than a potential breach of contract. Consequently, these two letters do not raise any issues of material fact regarding misrepresentations prohibited by c. 93A.
Proteon finally attempts to raise material issues of fact as to unlawful misrepresentations by offering its characterization of the total Digital-Cabletron transaction as having the effect of retaining rights under the License Agreement. Proteon points to Digital’s assertions that the Digital-Cabletron transaction included a Reseller and Services Agreement dated November 24, 1997 (“Reseller Agreement”) in which Digital agreed to purchase Cabletron products, resell the products to Digital customers and provide the exclusive warranty services, and a Contract Manufacturing Supply Agreement (“Manufacturing Agreement”) dated February 7, 1998 in which Digital would manufacture for a short period of time many of the products that under the Reseller Agreement Cabletron was to manufacture and sell to Digital. [See Sullivan Aff., para. 5, 6.) Proteon has not offered any facts to *450 indicate that the inclusion of Manufacturing and Reseller agreements in the transaction in and of itself constitute misrepresentations. Therefore, Proteon does not raise genuine issues of material fact and Digital’s motion for summary judgment on this claim is ALLOWED.
C. Proteon’s Rule 56(f) Motion
Proteon contends that it lacked sufficient time to conduct meaningful discovery in order to obtain facts needed to oppose Digital’s motion for summary judgment. A continuance is appropriate where the party opposing summary judgment shows that only by further discovery may it “present by affidavits facts essential to justify [its] opposition." Commonwealth v. Fall River Motor Sales, Inc., 409 Mass. 302, 307 (1991), quoting Mass.R.Civ.P. 56(f). One common reason for denying a continuance is the “irrelevance of further discovery to the issue being adjudicated in summary judgment.” Id. at 308. The trial judge has discretion in determining whether to grant a continuance. Id. at 307.
Proteon asserts that it requires access to the entire text of the Digital-Cabletron Asset Purchase Agreement, not only to the excerpts attached to the April 27 Burger and Sullivan affidavits. As discussed above, the court considers the excerpts sufficient to demonstrate the assertion regarding ultimate nonassignment of the Brouters Agreement. The remainder of the Asset Purchase Agreement is not relevant to the purposes of this summary judgment motion.
Proteon further claims that it must review the contents of the Manufacturing and Reseller Agreements and depose personnel with knowledge of these negotiations. As to the breach of contract claims, these agreements are immaterial. As to the c. 93A claim of misrepresentations, as discussed above, Proteon has not identified any material facts that these agreements will reveal that would indicate actionable misrepresentations.
Proteon finally asserts its need to discover agreements between Digital and Compaq Computer Corporation (“Compaq”) which it claims the court has ordered Digital to provide. For the reasons stated above, this agreement has no bearing on either the alleged breach of contracts or alleged misrepresentations as to the License Agreement. Moreover, opposition to a motion for summary judgment is not the proper procedure for alleging failure to comply with a court order.
For these reasons, Proteon fails to state grounds for denial or continuance of Digital’s motion for summary judgment. Accordingly, the court DENIES Proteon’s rule 56(f) motion.
D. Proteon’s Motion to Dismiss Digital’s Counterclaims Pursuant to G.L.c. 231, §59H
Digital makes four counterclaims against Proteon: abuse of process, violations of c. 93A, intentional interference with advantageous business relationship and breach of the implied covenant of good faith and fair dealing, Counts I, II, III, and IV, respectively. Proteon now files a special motion to dismiss these counterclaims pursuant to G.L.c. 231, §59H.
Chapter 231, §59H, commonly known as the “antiSLAPP” law,[5] is a response to the increase in meritless lawsuits brought primarily to discourage the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 161 (1998). Section 59H permits a party to move for dismissal of claims asserted against it if the claims are “based on said party’s exercise of its right to petition under the constitution of the United States or of the commonwealth.” G.L.c. 231, §59H. Proteon asks the court to dismiss all of Digital’s counterclaims on the grounds that they are based upon Proteon’s protected exercise of its right to petition, here Proteon’s lawsuit claiming breach of contract and c. 93A violations against Digital.
The Supreme Judicial Court recently clarified the elements and burdens of production for an anti-SLAPP claim. The movant who seeks dismissal pursuant to §59H must make a threshold showing that the claims against it are “ ‘based on’ petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.” Duracraft at 167-68. The burden then shifts to the nonmoving party to show both that the moving party’s exercise of its right to petition lacked “any reasonable factual support or any arguable basis in law” and that “the moving party’s acts caused actual injury to the responding party.” Id. at 168, G.L.c. 231, §59H.
Proteon argues that the only basis for Digital’s Counts I, II, and III (abuse of process, violations of c. 93A, and intentional interference with advantageous business relationship) is the lawsuit filed by Proteon against Digital. The wording of Counts I, II, and III makes clear that the claims are predicated on Proteon’s lawsuit. See Sea Heights Resident Asso., Inc. v. Charles Tringale, 8 Mass. L. Rptr. No. 16, 358, 360 (June 22, 1998 (J. Tierney) (court reviewed wording of the counts to determine whether the nonmovant asserted claims based on activity independent of the movant’s petitioning activity). However, this court has ruled that c. 231, §59H is not intended to repeal common law by dismissing a claim where conduct implicating SLAPP meets only one element of the claim. See Bisognano v. Jain, 4 Mass. L. Rptr. No. 30, 671, 674 (January 4, 1996) (J. Roseman) (denying c. 231, §59H motion to dismiss abuse of process, intentional, reckless or negligent infliction of emotional distress, and interference with advantageous relations claims).
To sustain an abuse of process cause of action, the plaintiff must show not only that the defendant used process but that the use of process was intended to *451 accomplish an ulterior or illegitimate purpose for which the process was not intended or designed, damage to the defendant, and malice. Id. Section 59H applies only to use of process, not the elements of purpose, damage and malice. Id. Similarly, interference with advantageous contractual and business relations, requires showing an existing contract with a third party, that the defendant knowingly induced breach of the contract, and harm. United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812 (1990). To prevail on a Chapter 93A claim, a plaintiff must show the defendant engaged in unfair and deceptive acts that caused loss of money or property and that such loss was reasonably foreseeable. Shepard’s Pharmacy, Inc. v. Stop & Shop Co’s., Inc., 37 Mass.App.Ct. 516, 523 (1994). On each of these claims, Proteon’s use of process goes to only one of the elements. Therefore, following the reasoning of Bisognano, Proteon fails to show that the claims are based on its petitioning activities alone, with no other substantial basis. The motion to dismiss Counts I, II and III is DENIED.
Proteon asserts that Digital’s claim of breach of implied covenant of good faith and fair dealing lacks any substantial basis other than Proteon’s petitioning activity. Proteon also argues the claim is frivolous, thus barring it from protection under the statute.[6] An implied covenant of good faith and fair dealing arises from an existing contract. This implied covenant provides “that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract ...” Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991), quoting Drucker v. Roland W. Jutras Assocs., 370 Mass. 383 (1976). Therefore, to determine whether or not a breach occurred, one must examine the terms of the contract and the conduct of the parties.
The Supreme Judicial Court held that there may be enforceable contracts which limit a party’s right to petition such that a party may sue another on the ground that the petitioning activity violated the agreement. Duracraft at 165-66. Here, the parties dispute whether or not the agreements between them, as well as the implied covenant of good faith and fair dealing, allow a lawsuit such as Proteon’s against the other parly to the agreements. It is the alleged breach, that happens to be in the form of legal action, not the legal action alone that is the basis of this contract claim. Therefore, Proteon’s claim that Count IV is based solely on or lacks additional or other substantial basis fails. Accordingly, the motion to dismiss Count IV is DENIED.
III. CLAIMS BETWEEN PROTEON AND CABLETRON
A. Proteon’s claim
Proteon alleges that Cabletron was unjustly enriched by its receipt, as an assignee of Digital’s rights under the License and Brouters Agreements, of Proteon’s proprietary information without Proteon’s consent. Cabletron argues that since there are no disputed material facts, as a matter of law it is entitled to summary judgment because the Brouters Agreement was never assigned to Cabletron and that consent was not required for the assignment of the License Agreement. Consequently, there can be no unjust enrichment.
As discussed above, as a matter of law, the Brouters Agreement was never assigned to Cabletron and therefore cannot be grounds for unjust enrichment. However, the License Agreement assignment did require Proteon’s consent. Cabletron asserts it purchased the License agreement in good faith and by law is insulated from any order of restitution. Restitution is an equitable remedy available when a person has been unjustly benefited at the expense of another; merely receiving a benefit from another party is not sufficient to require restitution. Keller v. O’Brien, 425 Mass. 774, 778 (1997).
While there is no dispute that Cabletron purchased the rights for good value, Proteon contends the acquisition lacked good faith because Cabletron allegedly knew the License Agreement assignment required consent. A good faith purchaser is one who purchases assets for value, without fraud, misconduct, or knowledge of adverse claims. See Oakville Development Corp. v. Federal Deposit Ins. Corp., 986 F.2d 611, 614 (1st Cir. 1993). To be a good faith purchaser, one must be honest but is not required to exercise due care. Dion v. Silver City Dodge, 398 Mass. 58, 60 (1986). A party has notice of a fact when it has reason to know of it, based on all the information at its disposal. Demoulas v. Demoulas Supermarkets, Inc., 424 Mass. 501, 58 (1997), citing Michelin Tires (Canada), Ltd. v. First National Bank of Boston, 666 F.2d 673 (1st Cir. 1981).
Cabletron asserts that throughout the DigitalCabletron transaction, it did not know nor had any reason to know that Proteon claimed the need for consent, that Digital had represented its right to assign in arms-length negotiations, and that the language of the License Agreement itself did not suggest that Proteon might have a claim against Cabletron. Cabletron’s affiant states that he was not aware of any claim by Proteon that Proteon’s written consent was required until after consummation of the transaction. [Supplemental Affidavit of David Kirkpatrick (“Kirkpatrick Supp. Aff.’j, para. 3.] He further states that he relied on Digital’s written representation and warranty that it had the right to assign. [Kirkpatrick Supp. Aff., para 2.) Proteon argues this statement is invalid for summary judgment purposes as it is not supported by copies of the referenced documents, in accordance with Rule 56(e). The court finds that the affiant was involved in the Digital — Cabletron negotiations and therefore is qualified to testify as to information on which Cabletron relied.
*452 Proteon concedes that it never notified Cabletron of the consent requirement, but claims the requirement was clear pursuant to the language of Section 20.2, sufficient to put Cabletron on notice that the transfer terms breached the License Agreement. This argument disregards the fact that Digital interpreted the License Agreement differently and warranted its interpretation. That a dispute later arose over the construction of the contract terms is not sufficient to put a third party on notice during prior negotiations for the purposes of an unjust enrichment claim.
Proteon has failed to offer any evidence that demonstrates Cabletron had notice of the consent requirement from Proteon, Digital or the contract language itself. For this reason, Cabletron’s motion for summary judgment is ALLOWED.
B. Cabletron’s Counterclaims
Cabletron moves for summary judgment as to liability on its counterclaims against Proteon. Cabletron claims that Proteon’s law suit against Cabletron and its successful request for an injunction prohibiting the exercise of Cabletron’s rights under the Basic Order Agreement and the License Agreement constitute breaches of those agreements, Counts I, II, III and IV. Cabletron additionally claims that Proteon’s actions constitute abuse of process, interference with advantageous contractual relationships, violation of c. 93A and breach of its duty of good faith and fair dealing, Counts V, VI, VII and VIII respectively.
BACKGROUND
Cabletron and Digital entered into an Asset Purchase Agreement on November 24, 1997, in which Cabletron agreed to purchase Digital’s Network Products Business Unit. [Cabletron Systems, Inc.’s Statement of Material Facts as to Which There is no Genuine Issue to be Tried, (“Cabletron’s Undisputed Facts”) para. 1.) The parties completed the transaction on February 7, 1998. Id. Cabletron paid $430 million in cash and product credits for Digital’s Network Products Business Unit. Id.
Cabletron purchased the Proteon-Digital License Agreement and the Proteon-Digital Basic Order Agreement as a part of the transaction. [April 27 Burger Aff., Burger Supplemental Aff.][7] Proteon did not consent to the transfer of either agreement. [Cabletron’s Undisputed Facts, para. 2.) The Basic Order Agreement provided that Proteon supply Digital with computer networking products and that Digital would use the products internally and resell them to customers. Id., para. 9. Proteon agreed to provide spare parts and materials needed by Digital to service purchasers of these products. Id. Proteon expressly warranted that it had the right to convey the intellectual property contained in the products and that it possessed any and all intellectual property licenses Digital needed to distribute these products. Id., para. 10. In both the License and Basic Order agreements Proteon agreed to certain indemnity obligations for certain intellectual property claims against Digital. Id., para 8; Plaintiffs response to Cabletron’s Undisputed Facts, para. 8. The Basic Order Agreement provides that Proteon will assume certain obligations in the event of an injunction arising from certain intellectual property claims. [Cabletron's Undisputed Facts, para. 12; Plaintiffs response to Cabletron’s Undisputed Facts, para. 12.]
On April 17, 1998, following the filing of Proteon’s action against Digital and Cabletron, Proteon obtained an injunction that prohibited Cabletron from “disbursing, transferring, assessing, disposing or licensing, distribution, dissemination and/or using any of the intellectual property of Proteon.” [Cabletron’s Undisputed Facts, para. 18.] On April 22, 1998, Cabletron wrote Proteon informing Proteon that the restraining order barred Cabletron from using, licensing, or distributing products that are subject to the Basic Order Agreement, and that Proteon was in breach of the Agreement. Id., para. 21. The letter demanded that Proteon comply with the Basic Order’s indemnity clause. Id. The court dissolved the restraining order on April 28, 1998. Id., para. 19. As of May 13, 1998, Proteon had not responded to the letter. Id., para. 21.
DISCUSSION
As the moving party for summary judgment the third-party plaintiff Cabletron bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass., 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id.
1. Breach of Contract Claims
Cabletron’s breach of contract claims are predicated on its assertion that it is undisputed that Digital assigned the Basic Order Agreement and the License Agreement to Cabletron and that as a matter of law the assignments were lawful. As discussed above, it is established that the two assignments occurred. If the assignments were lawful then Proteon’s obligations under the agreements extend to Cabletron. Whether or not the assignments were in keeping with the terms of the agreements and what Proteon’s obligations are to the assignee requires additional analysis. Cabletron asserts that the Basic Order Agreement does not restrict Digital’s ability to assign its rights. Proteon disagrees, pointing to language in the agreement prohibiting Digital from disclosing “any information pertaining to the existence of or terms of’ the Basic Order Agreement as evidence that the Agreement is not assignable.
Generally, contract rights are assignable. Barry v. Duffin, 290 Mass. 398, 404-05 (1935). Contract rights are not assignable where expressly forbidden by the terms of the contract or prohibited by statute, or where assignment would materially change the obligor’s duty *453 or materially increase the risk or burden imposed on the obligor. American Employers’ Insurance Co. v. Medford, 38 Mass.App.Ct. 18, 22 (1995).
As discussed above regarding the motion to strike the Burger Supplemental Affidavit, the only reference to assignment in the Basic Order Agreement is a clause that explicitly states assignment by Proteon shall be cause for Digital’s termination of the agreement. There is no language expressly allowing, prohibiting or penalizing assignment by Digital. The language Proteon cites appears in Section 12 of the Agreement, entitled “Confidential Information and Advertising.” Contraiy to Proteon’s reading, this language is unrelated to the question of assignment rights. Consequently, because the Agreement does not expressly forbid assignment by Digital and because there is no evidence that assignment would give rise to any of the exceptions noted above, as a matter of law, Digital may assign its rights under the Basic Order Agreement.
Cabletron claims that Proteon agreed to defend at its expense claims against Digital or any lawful assignee who asserts that property subject to the agreement infringes any intellectual property interest, and agreed to pay all costs and damages finally awarded. Proteon argues that the relevant duty to defend language refers to third parties, not Proteon.
Section 14, “Intellectual Property Indemnity,” reads in relevant part,
A. PROTEON shall defend at its expense any claims against DIGITAL, DIGITAL’S Customers or sublicensees, alleging that the Material, Spares, and Repairs or any part thereof, infringes any patent, copyright, trademark, trade secret, mask work, or other intellectual property interest in any country. PROTEON shall pay all third-party costs and damages finally awarded in any such . . . infringement, . . . provided PROTEON is notified promptly in writing of such a claim, given DIGITAL’S reasonable cooperation in the defense of the claim, and given the sole control over the defense and settlement of such claim, provided DIGITAL has the opportunity to participate in the defense and settlement.
In this subsection, the clause “PROTEON shall pay all third-party costs and damages finally awarded ...” contemplates three actors, the parties to the agreement and a party other than the parties to the agreement. The clause does not contemplate a suit by one party to the agreement against another party to the agreement. Therefore, it cannot intend that in the event such a suit arose, as now, Proteon will be liable for any costs and damages against Digital, or its assignee. Cabletron also asserts that the erroneously broad restraining order obtained by Proteon forced Cabletron to pay costs and attorney fees in its defense and to gain dissolution of the order. It claims these losses must be indemnified by Proteon, pursuant to the indemnification section of the Basic Order Agreement, and failure to do so constitutes a breach of contract. Proteon contends that its suit never alleged violation of intellectual property rights and that indemnification is limited to claims of third parties.
Subsection B of Section 14, Intellectual Property Indemnity, reads in relevant part:
If an injunction against DIGITAL’S or DIGITAL’S customer’s use, sale, lease, license, or other distribution of the Material, Spares, Repairs, or any part thereof results from such a claim, PROTEON shall, at its expense . . .
1. Either obtain for DIGITAL and/or DIGITAL’S customer’s the right to continue using, selling, leasing, licensing or otherwise distributing the Material, Spares, or Repairs or;
2. Replace or modify the Material, Spares, Repairs so that the Material, Spares, Repairs, become a noninfringing but functionally equivalent product
Section B must be read in conjunction with Section A to interpret Proteon’s indemnification obligation. Indemnification under Section A is premised on a claim by a third party, not a party to the agreement. It is reasonable that Section B incorporate the same premise. Therefore, Cabletron’s costs flowing from the injunction obtained by Proteon does not constitute breach of the Basic Order Agreement. Cabletron’s motion for summary judgment on this theory fails.
Cabletron further alleges that by obtaining the injunction and failing to indemnify Cabletron for costs and damages, Proteon prevented Cabletron from exercising its rights and breached its indemnity obligations under the License Agreement. Proteon disputes the occurrence of any breach.
It is established that Digital assigned the License Agreement, albeit in breach of the License Agreement terms. Section 11, Indemnity, of the License Agreement provides,
Proteon shall defend at its own cost and expense, and hold Digital, Digital’s customers and Digital’s licensees harmless from any final award of damages to a third party of damages of whatever nature . . . arising from any claim or action against Digital . . . for actual or alleged infringement of any . . . property right. . .
As in the Basic Order Agreement, this clause contemplates indemnification in the event of a claim by a third party not a party to the agreement. Here as well, Proteon’s actions do not breach the License Agreement. Accordingly, summary judgment for Cabletron on its breach of contract claims, Counts I, II, III, and IV, is DENIED.
2. Breach of Duty of Good Faith and Fair Dealing
Cabletron alleges that Proteon’s actions prevented it from enjoying the fruits of the License and Basic Order Agreements. In particular, it claims that the *454 temporary restraining order was baseless and over-broad and was an attempt to extort unwarranted payment from Digital. Proteon counters that there is no contract between it and Cabletron out of which a duly of good faith and fair dealing arises and if there were, Cabletron fails to identify facts to support a finding of lack of good faith and fair dealing.
Every contract implies a duiy of good faith and fair dealing between the parties. This implied covenant provides “. . . that neither pariy shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . .” Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991), quoting Drucker v. Roland W. Jutras Assocs., 370 Mass. 383 (1976). Cabletron’s objections to the restraining order have been addressed and resolved by the subsequent dissolution of the order. The alleged breach of the duty of good faith and fair dealing rests on its speculation as to Proteon’s motives and goals driving the request for injunctive relief and the filing of the lawsuit. It offers no evidence that Proteon acted in bad faith. For this reason, summary judgment is DENIED on this count.
3. Abuse of Process, Interference with Advantageous Contractual and Business Relations, and Violation of c. 93A Counts
Cabletron’s allegations on these counts repeat the allegations discussed above. Again, Cabletron offers insufficient evidence in support of these claims. Therefore, summary judgment is DENIED on these counts.
C. Proteon’s Special Motion to Dismiss Cabletron’s Counterclaims Pursuant to G.L.c. 231, §59H (Anti-SLAPP)
Proteon moves to dismiss Cabletron’s counterclaims of breach of contract, Counts I, II, and III, and indemnification, abuse of process, interference with advantageous contractual and business relations, c. 93A violations, and intentional interference with advantageous business relationship, Counts IV, V, VI, Vil, and VIH.
Proteon argues that the only basis for Cabletron’s counterclaims is that Proteon filed a lawsuit against it. Filing a lawsuit falls within the scope of right to petition, as defined by the statute. G.L.c. 231, §59H (“ ‘a parly’s exercise of its right of petition’ shall mean any written or oral statement made before or submitted to a legislative, executive, or judicial body . . .”), Winglee International, Inc. v. Hung & Jing, Inc. dba Comfort Inn et al., 8 Mass. L. Rptr. No. 6, 139, 140 (April 13, 1998) (Josephson, J.). There is no merit to Cabletron’s characterization of Proteon’s legal action as “supposed” petitioning activily. However, to proceed with the anti-SLAPP analysis, Proteon’s lawsuit must be the sole basis of Cabletron’s countersuits.
Cabletron contends that three of the counterclaims arise from Proteon’s contractual obligations, and that the remaining claims arise from Proteon’s misconduct, specifically, its wrongful purposes and motives in obtaining a facially overbroad restraining order. Cabletron additionally claims that Proteon is obligated in meeting the threshold requirement to demonstrate that its petitioning activities are constitutionally protected by showing, at this first step of the analysis, that its claim against Cabletron was not baseless litigation.
Cabletron misconstrues the burdens placed on the anti-SLAPP movant. The Supreme Judicial Court set out the test outlined, above, in recognition of the constitutional problems inherent in anti-SLAPP statutes. Duracrajt at 166. This test places the burden of establishing a prima facie case on the movant, but then shifts the burden of showing baselessness and actual injury to the nonmoving party. Cabletron’s argument that Proteon’s action against it was baseless, and thus outside the protection of G.L.c. 231, §59H, is misplaced.
Cabletron argues that Duracrajt suggests that G.L.c. 231, §59H does not apply to contract claims. This is an oversimplification of the decision. Duracraft developed its anti-SLAPP test from a need to construe the statute in conformance with the constitution. Duracrajt at 167. Duracrajt addressed the issue of whether a contracts claim may be dismissed under the anti-SLAPP statute where the movant argued it was filed in response to the movant’s deposition for a trademark proceeding and where the movant had previously executed a nondisclosure agreement with the nonmovant. The court directed itself to the general situation in which parties limit their exercise of speech and petitioning rights by prior assumed obligations. In these instances, the court reasoned the anti-SLAPP statute cannot be used to bar suits arising from petitioning activity that violates prior obligations between parties. Duracraft at 165-66. It was to allow such suits that the court crafted its anti-SLAPP test. Contrary to Cabletron’s assertion, Duracrajt does not remove contract claims from the purview of G.L.c. 231, §59H, rather it states that there may be enforceable contracts which limit a party’s right to petition such that a party may sue another on the grounds that petitioning activity violated the agreement.
Nevertheless, for the reasons outlined above regarding dismissal of Digital’s breach of implied covenant of good faith and fair dealing, it is clear that Proteon fails here as well to establish that these claims sounding in contract are based only or primarily on its petitioning activity.
Proteon’s motion also fails as to the tort counterclaims, Counts V, VI, and VII, for the reasons outlined in the discussion of its motion to dismiss Digital’s counterclaims sounding in tort. Accordingly, Proteon’s motion to dismiss Counts I, II, III, IV, V, VI, VII and VIII is DENIED.
*455 ORDER
For the foregoing reasons, -with respect to the parties’ preliminary motions, it is hereby ORDERED that:
1. Digital’s motion to file a reply brief be ALLOWED;
2. Cabletron’s motion to file a reply brief be ALLOWED;
3. Digital’s motion to strike the affidavit of Robert' Koch be AJLLOWED;
4. Cabletron’s motion to strike the affidavit of Robert Koch be ALLOWED;
5. Proteon’s motions to strike portions of the affidavits of William A. Burger (April 27, 1998) and Christopher J. Sullivan be DENIED;
6. Proteon’s motions to strike the supplemental affidavit of William A. Burger, the Burger Multiswitch 900 affidavit, and the affidavit of Frank A. Coppola be DENIED.
As to motions regarding the claims between Proteon and Digital, it is further ORDERED that:
1. Digital’s motion for summary judgment be DENIED as to the breach of the License Agreement and ALLOWED as to breach of the Brouter’s Agreement and the c. 93A claim; and
2. Proteon’s motion for dismissal of Digital’s claims pursuant to G.L.c. 231, §59H be DENIED.
As to the motions regarding the claims between Proteon and Cabletron, it is further ORDERED that:
1. Cabletron’s motion for summary judgment on Proteon’s claim of unjust enrichment be ALLOWED;
2. Cabletron’s motion for summary judgment on its counterclaims of breach of contract, Counts I, II, III, and IV, and its counterclaims of abuse of process, interference with advantageous contractual relationships, violation of c. 93A and breach of its duty of good faith and fair dealing, Counts V, VI, VII and VIII respectively, be DENIED; and
3. Proteon’s motion for dismissal of Cabletron’s claims pursuant to G.L.c. 231, 59H be DENIED.

There are two Burger affidavits dated April 27, 1998. Cabletron incorrectly attached to its motion to strike an affidavit that refers to Burger’s knowledge as a Cabletron employee. The motion appears to object to another April 27 affidavit which refers to Burger’s knowledge as a Digital employee.

 These documents are Schedule 1.2, Assigned Licenses; First Amendment to Asset Purchase Agreement; and Schedule 1.2, amended.

 This does not foreclose Proteon from amending its complaint if it discovers any unlawful transfer of intellectual property apart from improper assignment of rights under the two agreements at issue.

 “SLAPP” is an acronym for “strategic lawsuit against public participation.”

As it is not an element of the moving party’s prima facie burden, Proteon is not required to show lack of merit of the nonmovant’s claims, and the court will not consider that at this point. Logically, once the moving party shows that the nonmovant’s claims were brought solely because of the moving party’s petitioning activities, in most cases such claims would by definition be frivolous.

Proteon rejects Cabletron’s stated undisputed fact that Cabletron acquired the Basic Order Agreement from Digital as part of the total transaction. Plaintiffs response to Cabletron’s Undisputed Facts, para. 2. Cabletron supports this asserted fact by the sworn statement that “Digital assigned the Basic Order Agreement to Cabletron as part of Digital’s sale of its Network Products Business Unit.” Burger Supplemental Affidavit, para. 5. Proteon claims that Cabletron’s failure to produce documentation of the Basic Order Agreement purchase gives rise to a disputed fact. Yet Proteon offers no evidence contesting the sworn statement, nor does it directly dispute that such a sale took place. There is no disputed fact.